RAYMON ELLIS, JR., also known as WILLIE R. ELLIS, JR., Plaintiff-in-Error, v. WAYNE A. SNELL, Defendant-in-Error. —313 S. W. (2d) 558.

Western Section, Jackson. March 16, 1955.

Certiorari denied by Supreme Court June 8, 1956.

Quick, Buchignani & Greener, Memphis, for plaintiff in error.

Clyde P. West, Memphis, for defendant in error.

AVERY, P. J. (W. S.) This case comes to this Court from the Circuit Court of Shelby County, Division One, Honorable Harry Adams, Judge. The relationship of the parties will be shown as in the Court below—W. A. Snell as plaintiff and Raymon Ellis, Jr., also known as Willie R. Ellis, Jr., as defendant.

Plaintiff brought suit against defendant for damage to an automobile, the equitable ownership of which was in plaintiff. The car was damaged while parked on the streets of Memphis, defendant having driven into it from the rear. Immediately following the collision plaintiff's car, at his direction, was removed to the Jefferson Garage in Memphis, Tennessee, for repairs, where the repair bill ran up to $850. Plaintiff did not take his car out of that garage and the Oakland Deposit Bank, which held the legal title under a chattel mortgage to secure it in the payment of $1,007 replevined the car from the Jefferson Garage. The collision occurred about November 5, 1954, and the suit in this case was instituted on or about the 26th day of April, 1955.

The declaration alleges negligence in the usual way. There was a formal "Not Guilty" plea filed by defendant and upon motion of plaintiff, the defendant was required to specially plead. The first special plea, filed on July 6, 1955, is not now involved in this Court, nor are the facts of the case.

On October 3, 1955, the defendant filed a special plea, the pertinent parts of which are as follows:

"* * * avers by way of an amendment to his special pleas, that since the filing of his special pleas it develops that the Ford automobile referred to in plaintiff's declaration is not owned by plaintiff, as alleged, but that the legal title to said automobile was at the time referred to in the declaration and at the present time vested in the Oakland Deposit Bank of Oakland, Tennessee, under chattel mortgage to secure the payment of an original indebtedness, to said bank in the sum of One Thousand Four

Hundred forty seven ($1,447.00) Dollars. Defendant further avers that at the time of the accident referred to in plaintiff's declaration plaintiff was indebted to the said Oakland Deposit Bank in the sum of One Thousand seven ($1,007.00) Dollars, and was in default as respects said indebtedness, and that said indebtedness was in excess of the value of plaintiff's automobile at said time and is in excess of value of plaintiff's automobile at this time.

"Wherefore, defendant avers that plaintiff had neither the legal or equitable title to said automobile at the time of the accident referred to in the declaration, nor does he have either the legal or equitable title to said automobile at this time, and is not the real party in interest in this case.

"Defendant further avers that immediately following the accident referred to in plaintiff's declaration the Ford automobile therein referred to was removed at plaintiff's direction to the Jefferson Garage in Memphis, Tennessee, for repairs; that said automobile was accordingly repaired by the said Jefferson Garage at plaintiff's direction and at a cost of Eight Hundred fifty ($850.00); that after said repairs had been made plaintiff refused to accept delivery of said automobile and thereafter instituted an action for conversion in the Circuit Court of Shelby County, Tennessee, which action was later non-suited by plaintiff; that during all of this time said automobile has remained in possession of the Jefferson Garage, from which place the same has been replevined in action by the Oakland Deposit Bank hereinabove referred to.

"Wherefore, defendant avers that plaintiff has neither the legal or equitable title to said automobile and is without legal status to bring this action." (R. 14)

To this special plea the plaintiff demurred and his demurrer is as follows:

"Plaintiff demurs to defendant's amendment to his special pleas, and for ground for demurrer says:

"That nowhere in this amendment does the defendant allege that the plaintiff was not in lawful possession of the automobile at the time of the injury for which plaintiff sues. The fact that plaintiff owed the bank an indebtedness secured by a chattel mortgage on the automobile is not a defense to plaintiff's suit against a stranger for injury to the automobile while in plaintiff's lawful possession.

"Plaintiff for further demurrer says that the fact that the automobile was removed to Jefferson Garage for repairs, and that plaintiff sued for conversion and took a non suit, all during which time the automobile was in the possession of the Jefferson Garage, is no defense to plaintiff's suit against the defendant for damage to his automobile.

"For further demurrer plaintiff says that no allegation in this amendment to the special plea constitutes any defense to plaintiff's suit against Willie R. Ellis, Jr., and is not a defense to any allegation made in plaintiff's original declaration.

"Wherefore plaintiff prays the judgment of the Court upon this demurrer." (R. 16)

The Trial Court sustained the demurrer, to which action of the Court the defendant reserved exceptions, and the case was put to trial before the Court and a jury. There was a verdict for the plaintiff in the amount of $1,000. (R. 19)

Motion for new trial was filed by defendant, raising only the question that the Court erred in sustaining the demurrer to the amendment of defendant's Special Plea, which amendment is hereinabove set out, and that the verdict was excessive. Motion for a new trial was overruled by the. Court on October 14, 1955, and from that action of the Court the defendant appealed upon the technical record, and has assigned error which he has referred to as "Assignment A" and "Assignment B".

Without setting forth these Assignments in full, Assignment A simply is leveled at the right of the plaintiff to maintain his suit, because at the time of the collision he was in default in payment of the chattel mortgage on the car held by Oakland Deposit Bank, the debt secured thereby being in excess of the value of plaintiff's car at that time and at the time of the filing of the amendment; that following the collision the car was placed in the Jefferson Garage by plaintiff, where a repair bill was incurred in the amount of $850, the car remaining in the possession of the garage after the filing of this suit and until the Oakland Deposit Bank, the mortgagee, replevined same.

Assignment B is to the effect that the indebtedness was in excess of the value of plaintiff's car at the time of the accident and also at the time the amendment to the special plea was filed, and that the sustaining of the demurrer to remove from the consideration of the court

and jury, allegations that should either have limited plaintiff's recovery or should have caused the Court to have plaintiff hold the damages fixed by the verdict as the trustee for the mortgagee, Oakland Deposit Bank.

The defendant insists that Assignment A raises the question—

"When a mortgagor has standing to sue a third party for negligent damage to a chattel and when he does not."

And that Assignment B raises the question—

"What amount may a mortgagor recover?"

Since the Assignments embrace or attempt to embrace the latitude shown by the wording of same, it becomes necessary to set out in this Opinion defendant's motion for a new trial by which he is limited in his plea here, upon this legal question, to such legal questions as were raised by the new trial motion. The Motion for New Trial is as follows:

"Comes now the defendant, Willie R. Ellis, Jr. and moves the Court for a new trial in the cause upon the following grounds:

"(1) That the Court erred in sustaining, during the course of the trial, the demurrer of the plaintiff to the amendment to the defendant's special pleas for the reason that at the time of the trial the plaintiff had neither the legal nor the equitable title to the automobile which was damaged. And, further, at that time he did not have possession of the automobile, nor the right to possession, and was in default under a mortgage on the automobile.

"(2) That the amount of the damages awarded was excessive because the weight of the evidence shows that the repair bill of Eight Hundred Fifty ($850.00) Dollars truly represented the difference in value of the automobile immediately before and immediately after the accident, and no damage should be awarded in excess of that amount.

"Wherefore, the defendant moves that this Honorable Court grant him a new trial." (R. 20)

 A conditional vendor or conditional vendee can prosecute an action for damages, the result of negligence of third party, to property involved in a conditional sales contract. The same rule applies where the relationship is mortgagor and mortgagee, as well as in the relationships of bailor and bailee, and a recovery by either will prevent a recovery by the other.

In the case of Carolina, Clinchfield & Ohio R. Co. v. Unaka Springs Lumber Co., 130 Tenn. 354, 379, 380, 170 S. W. 591, 597, plaintiff sought to recover from the Railroad property destroyed by fire, which the Railroad started by sparks from its engine; and included in the property destroyed was a saw mill engine and other parts of machinery of a saw mill, upon which a vendor's lien had been retained until certain notes were paid, given for the purchase price. The Court said:

"The third and last reason assigned by the railway company for its insistence that the lumber company had no right to recover damages for the burning of the property in question was that the legal title thereto was not in the lumber company, but was outstanding in a third party".

(That part of the property destroyed in the fire on which this conditional sales contract was outstanding is described.)

"The proof shows that the lumber company had executed notes for the purchase price of the engine and parts of the mill, and the notes recited that the vendor retained title to the property until the notes were paid. It appears that a part of the original purchase price of $1,500 had been paid at the time of the trial below, but the *amount* of such payments is a matter of uncertainty on the record; whether the balance remaining unpaid was $250 or about $900 is not clear. However, the amount of the unpaid balance is not material to any question arising on this record."

(The word "amount" is in italics for emphasis.)

"The lumber company was in the undisputed possession of the property *at the time of the fire.* A purchaser of personal property, under a conditional sale in which title is retained in the vendor to secure the purchase price, is the equitable owner of the property. Light v. Greenwich Insurance Co., 105 Tenn. [480] 487, 58 S. W. 851. The retention of the title in the vendor was a mere security for the payment of the price. Marion Mfg. Co. v. Buchanan, 118 Tenn. [238] 251, 253, 99 S. W. 984, 8 L. R. A., N. S., 590, 12 Ann. Cas. 707. The destruction of the property by fire while in the possession of the vendee, before payment, did not relieve the vendee from the obligation to pay the purchase price. Marion Mfg. Co. v. Buchanan, supra.

"The identity of the property was destroyed when it was consumed by fire, and either the vendor or the conditional vendee had a right to sue for and recover the damages resulting from its wrongful destruction. The vendor had a right of action because of his retained title, which he held as security for the unpaid portion of the purchase price; and the conditional vendee had a right to sue and recover because of his possession and special or equitable ownership; but a recovery by one would be a bar to the recovery by the other. Smith v. Gufford, 36 Fla. 481, 18 So. 717, 51 Am. St. Rep. 37. If the suit is brought by the conditional vendee, as in the present case, he is entitled to recover the full value of the property, and he will hold the balance beyond his own interest—that is, the amount due the vendor on the purchase price — in trust for the vendor. White v. Webb, 15 Conn. [302] 305; Smith v. Gufford, supra. These rules are in harmony with our own cases. Criner v. Pike, 2 Head, 398, 400; Railway Co. v. Hall, 107 Tenn. [512] 514, 64 S. W. 491." (Emphasis added.)

And with that authority, the Court overruled the Assignment.

In the case of First National Bank v. Union Railway Co., 153 Tenn. 386, 388, 284 S. W. 363, 364, there is involved the recovery of damages to an automobile demolished by the Railway Company, which had been sold by Tri-State Motor Sales Company to one J. H. Horton, some of the purchase price being paid in cash and the remainder evidenced by twelve interest-bearing right and title notes of $62.41 each, payable monthly.

These notes had been negotiated by the original vendor to the plaintiff Bank. The claim agent for the Railway Company approached Horton for settlement and was told that he had not paid for the car and to see the Tri-State Motor Sales Company. The claim agent was led to believe that the purchase money on the car was due the Motor Sales Company; the amount of damage was agreed upon, and the Motor Sales Company and Horton executed a joint release and received check from the Railway Company payable to them jointly; Horton endorsed the check and turned it over to the Motor Sales Company, but no part of the proceeds of the check was applied to the payment of the outstanding purchase money notes. Horton and the Motor Sales Company were both insolvent and the suit was instituted by the Bank against the Railway Company to recover the value of the car. The Railway Company interposed plea of accord and satisfaction. The Lower Court sustained this plea. On appeal, the Court of Appeals reversed the Lower Court in a judgment for the Bank. Petition for Certiorari was filed by the defendant Railway Company. In an Opinion by Mr. Justice McKinney, he posed the question:

"What are the rights of the parties?"

He cited with approval the Opinion in the case of Carolina, C. & O. Railroad Co. v. Unaka Springs Lumber Co., supra, and the cases from other states, as well as from texts, and in his Opinion it is said:

"It is well settled that either the conditional vendor or vendee can prosecute an action for injury to the property by a third party * * * The same rule applies where the relationship is that of mortgagor

and mortgagee. * * * Also where the relationship is that of bailor and bailee. * * * A recovery by one is a bar to a recovery by the other. * * * The underlying principle is that the bailee, vendee, or mortgagor is in rightful possession of the property, and that possession alone is sufficient to support an action for trespass or trespass on the case.

"The right of the conditional vendee to sue authorizes him to compromise and settle, in good faith, so as to preclude a recovery by the conditional vendor." (Citing several cases and texts.)

And in the same Opinion, it is said further:

"The decided weight of authority supports our conclusion upon this question, and, upon reason, would appear to be the better rule. The law favors the settlement of disputes by compromise. In an action of this character the vendee has a clear right of action, which, ordinarily, can be settled by compromise. The parties should not have to be burdened with the trouble, expense, and delay of a suit when they are in accord as to the amount of damages.

"The vendee is not such a trustee as that he cannot settle by compromise without the sanction of the vendor."

In that well-considered Opinion, the Court of Appeals was reversed, the Supreme Court holding that even a compromise settlement for destruction of property, in the custody of the vendee at the time destroyed, made in good faith, bound the vendor, and that the Bank, the

holder of the conditional sales contract, could not recover from the Railway Company.

In the case of Union Railway Co. v. Remedial Finance Co., 163 Tenn. 130, 132-137, 40 S. W. (2d) 1034, the Finance Company, plaintiff below, brought suit against the Railway Company, as the title owner, for damages to an automobile which had been conditionally sold to a vendee, one Bowling. The Finance Company held the title retention note. The automobile while in the possession of Bowling and driven by him, was involved in a collision with the Union Railway Company's car. Bowling was injured and the automobile was wrecked. Bowling brought suit for injuries to himself and damages to the automobile. Before the trial Bowling died and the suit was revived in the name of his administrator. On the trial there was no evidence offered as to the value of the automobile either before or after the collison, and the Trial Judge instructed the jury that such being the case it would be purely speculative if they undertook to fix damages for the automobile. The jury returned a verdict for $250 compensatory damages and $250 punitive damages, and judgment was entered accordingly for $500. In the suit by the Finance Company against the Railway Company, the defendant Union Railway Company filed a plea of "Not Guilty" and a special plea of res adjudicata based on the judgment in the case of Bowling v. Railway Company, insisting that "the original suit by the conditional vendee was a bar to this suit by the conditional vendor."

The Trial Judge overruled the plea upon the theory that the issue of damages to the automobile was withdrawn from the jury and not disposed of on the merits,

and entered judgment for $400 against the Railway Company, being the stipulated value of the involved automobile. The Court of Appeals reversed the judgment of the Trial Court and Petition for Certiorari was filed with and granted by the Supreme Court, and after argument, the Court said:

"We are constrained to adopt the view of the Court of Appeals that the instruction given by the trial judge in the original suit was, in effect, a directed verdict, rather than, as contended, a nonsuit; with the result that the judgment rendered was on the merits. Undoubtedly, a right, in common with that of the vendor, to bring the action in the first instance for damages to the car was in the conditional vendee. First Nat. Bank v. Union Ry. Co., 153 Tenn. 386, 284 S. W. 363, 365; Carolina, C. & O. Railway Company v. Unaka Springs Lumber Company, 130 Tenn. 354, 170 S. W. 591; Harris v. Seaboard Air Line R. Co., 190 N. C. 480, 130 S. E. 319, 49 A. L. R. 1452; Freeman on judgments, sec. 482 (5th Ed.)".

The Court then said:

"If having the right to sue, one, in the relationship of conditional vendee, or bailee, does sue, and there is a trial on the merits of the issue of liability for the identical injury which is the basis of his vendor's or bailor's right of action, both parties are precluded. We understand this to be well settled, both under the general doctrine of res adjudicata, and by application of the rule against the splitting of actions followed in our cases of Mobile & Ohio Railroad Co. v. Matthews, 115 Tenn. 172, 91 S. W. 194, and Smith

v. Cincinnati, N. O. & T. P. Ry. Co., 136 Tenn. 282, 189 S. W. 367, L. R. A. 1917C, 543.'' See: Cantrell v. Burnett & Henderson Co., 187 Tenn. 552, 558, 216 S. W. (2d) 307, 309.

And further referring to the argument made by counsel for the Finance Company, the Court said:

"As before suggested, stress has been plausibly laid by counsel for petitioner on that portion of the language employed in our cases, and used by the author of Freeman on Judgments:—'If a recovery has once been had for the unlawful act, no subsequent suit can be maintained.' We italicize the words relied on. But one is equally precluded by an adverse judgment in a former suit, brought by a party entitled to maintain it, and tried on the merits, even if it should be conceded that one of two parties having equal right to bring an action would not be precluded by a former suit brought by one of them in which (a) no recovery was sought for the element of damages in which he was interested, or (b) no judgment on that issue was had on the merits. We have no such case here, as already pointed out.''

On page 135 of 163 Tenn., on page 1035 of 40 S. W. (2d) of the Opinion, the Court referred to the case of Green v. Clarke, 12 N. Y. 343, cited in Freeman on Judgments, and referring to it as ''the excellent statement of the general rule'', said:

"It is a general rule that a bailee having a special property and the general owner may either of them sustain an action for the conversion of or an injury to property in which they are interested. The right to sue is indispensable to enable each to protect his

particular interest, but as the law will not suffer a defendant to be twice harassed for the same cause, only one suit can be brought and it will be a bar to every other.''

█ An examination of the Special Plea under attack in the instant case, reveals that the plea nowhere states that the automobile was not in possession of the plaintiff, vendee, at the time of the collision in which it was damaged. The literal averments of the plea are to the contrary. The Special Plea under consideration recites the fact that all the allegations contained in the special pleas ''heretofore filed in this case'' are relied upon and then it proceeds to recite the *substance* of this special plea, a part of which specifically avers that immediately following the accident referred to in the plaintiff's declaration, the Ford automobile was removed, at plaintiff's direction, to the Jefferson Garage in Memphis. The plea thus averring, the motion for a new trial leveled at the action of the Judge in sustaining the demurrer, avers that the error was brought about because ''at the time of the trial'', the plaintiff had neither title nor possession. Thus, in the special plea and in the motion for a new trial, no question is raised as to possession by plaintiff at the time of the collision in which the automobile was damaged, nor that the plaintiff had it in his possession at the time he ordered it carried to the Jefferson Garage, after the accident. The garage having physical possession, and the right to possession being the test in a replevin action, the Bank possessed the automobile so far as the record before us indicates.

█ It seems to be the insistence of the plaintiff that the right to sue and recover, by conditional vendee or

mortgagor, depends upon whether or not there has been a default in the conditional sales contract or the debt secured by a chattel mortgage. There is nothing in the record before us to indicate that the Bank ever wanted possession of the automobile until after the collision. We do not think that the fact that there might have been some default in payment of the conditional sales contract has any effect upon the right of the conditional vendee or mortgagor, in rightful possession of the property at the time of its damage, to in any wise change the rule with respect to his right to sue. If the conditional vendor or the mortgagee is satisfied for the property to remain in the possession of the mortgagor or the vendee, his right to sue for its damage or destruction continues, for the fact that the property may be damaged or destroyed in no wise releases such mortgagor or vendee from the payment of the debt, and the vendor or mortgagee could well say that we are expecting you, the mortgagor or conditional vendee, to pay this debt and consequently we are not going to be involved in any suit or action of tort on account of the damage by a third party, thus defeating any right of the mortgagor or vendee to recover the damages from the third party responsible therefor. We do not think our cases are susceptible of any such interpretation, nor that the general rule has any such exception.

The general rule is well stated in Freeman on Judgments, Vol. 1, Sec. 482, p. 1043 (5th Ed.), as follows:

"In the case of bailor and bailee, one is not concluded by a judgment for or against the other except as one claims through or under the other, or is represented by him in litigation. But where one

person holds the general title and another a special title or interest in personal property, as in the case of a bailor or bailee, each may maintain an appropriate action to vindicate his title or interest, and, by the weight of authority, either may recover the property or its value in case of its conversion or an injury to it. In the latter event, of course, a recovery by one would bar a recovery by the other for the same claim * * *"

■ If the plaintiff had a right to maintain his action and a right to recover, the amount of the recovery could not be limited to the value of any equitable interest he had in the automobile but was only limited by the actual damage to the automobile, as shown by the proof, and the verdict in this case being for $1,000, we must assume that the amount of the verdict was supported by the evidence, so we can give no consideration to the excessiveness of the verdict.

The result is that all of the Assignments are overruled, the judgment of the Trial Court affirmed, and judgment will be entered here for the amount of the judgment below, together with interest thereon from the date of the overruling of the Motion for New Trial, as shown above in this Opinion, together with costs adjudged against the defendant below, plaintiff in error here, and the sureties on his appeal bond.

Carney and Bejach, JJ., concur.